## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT SELAKOWSKI and
JOAN SELAKOWSKI,

      Plaintiffs,                             Case No. 13-12335

vs.                                      Hon. Gerald E. Rosen

FEDERAL HOME LOAN MORTGAGE
CORPORATION and WELLS FARGO
& COMPANY, N.A.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS AND DENYING
## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 24, 2014 _____

PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiffs Robert and Joan Selakowski commenced this suit in state court in May of

2013, asserting federal and state-law claims against Defendants Federal Home Loan

Mortgage Corporation ("Freddie Mac") and Wells Fargo & Company, N.A. ("Wells

Fargo")[1] arising from the foreclosure sale of their residence in Livonia, Michigan and the

_____

[1]Defendant Wells Fargo states that it has been improperly identified in Plaintiffs'
complaint as "Wells Fargo & Company, N.A.," and that the correct name of this entity is "Wells
Fargo Bank, N.A."

subsequent entry of an order evicting them from this property. Defendant Freddie Mac removed the case to this Court on May 28, 2013, citing a federal statute that grants it the power to remove any action to which it is a party. *See* 12 U.S.C. § 1452(f).

In lieu of answering the complaint, each of the two Defendants has filed a motion to dismiss or for summary judgment. In support of these motions, Defendants argue (i) that this case is subject to dismissal under the *Rooker-Feldman* doctrine, (ii) that in light of the expiration of the six-month period of redemption following the foreclosure sale of the subject property, Plaintiffs lack standing to pursue their claims in this case, and (iii) that in any event, Plaintiffs' complaint fails to state a valid claim for relief. Plaintiffs have filed a response in opposition to Defendants' motion, and also have brought a motion seeking leave to file an amended complaint in which they propose to assert three additional claims. Defendants oppose this request for leave to amend, arguing that the new claims set forth in Plaintiffs' proposed amended complaint are no more viable than the claims asserted in Plaintiffs' initial complaint.

Having reviewed the submissions of the parties on Defendants' and Plaintiffs' motions, as well as the remainder of the record, the Court has determined that oral argument is not necessary. Accordingly, pursuant to Local Rule 7.1(f)(2) of this District, this matter will be decided on the briefs. This opinion and order sets forth the Court's rulings on the parties' motions.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

For present purposes, a brief recitation of the underlying facts of this case will

2

suffice.  These facts are derived in part from the allegations of Plaintiffs' complaint, and in part from the exhibits accompanying Defendants' motions.[2]

In October of 2005, Plaintiffs Robert and Joan Selakowski entered into a mortgage loan transaction with The Prime Financial Group, Inc. in the amount of $232,000.00.  As security for this loan, Plaintiffs granted a mortgage on property located at 18642 Levan in Livonia, Michigan.  The mortgage was assigned to Defendant Wells Fargo, and this assignment was recorded with the Wayne County Register of Deeds on April 30, 2007.

In 2010, Plaintiffs began experiencing financial difficulties and sent documents to Wells Fargo seeking modification of the terms of their mortgage loan.  In January of 2011, Wells Fargo issued a written notice to Plaintiffs pursuant to Mich. Comp. Laws § 600.3205a, advising them that their mortgage loan was in default and providing a statement of their rights as borrowers.  (*See* Complaint at ¶ 15; Wells Fargo's Motion, Ex. C, Affidavit of MCL 600.3205 Notice.)  Although Plaintiffs continued to pursue a loan

---

[2]Defendants' motions are accompanied by materials that extend beyond the four corners of Plaintiffs' complaint, which evidently was filed without any exhibits.  While the Court's consideration of these additional materials ordinarily would dictate that Defendants' motions be "treated as [motions] for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), such conversion is not required if Defendants' exhibits may fairly be considered "part of the pleadings" – that is, if "they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (internal quotation marks and citation omitted).  In this case, the exhibits proffered by Defendants include documents relating to the mortgage on Plaintiffs' residence and the assignment of this mortgage to Defendant Wells Fargo, as well as a sheriff's deed evidencing the foreclosure sale of the subject property and orders entered in the state court eviction proceedings.  Because these materials are either directly referenced in the complaint or fairly encompassed within the allegations of this pleading, the Court may consider these exhibits in resolving Defendants' motions without treating these motions as seeking summary judgment under Rule 56.

modification throughout much of 2011, no agreement could be reached.  More specifically, while Plaintiffs received a loan modification offer from Wells Fargo on October 20, 2011, they allege in their complaint that they were unable, despite repeated efforts, to make contact with a Wells Fargo representative within the ten-day period for accepting this offer.  (*See* Complaint at ¶ 18.)[3]

In September of 2011, Wells Fargo commenced a foreclosure by advertisement of the mortgage on Plaintiffs' Livonia residence.  A sheriff's sale was held on December 7, 2011, and Defendant Freddie Mac purchased the subject property for $253,647.28.  (*See* Complaint at ¶ 19; Wells Fargo's Motion, Ex. D, Sheriff's Deed.)  When Plaintiffs failed to redeem the property within the six-month period for doing so, title to the property vested in Freddie Mac on June 7, 2012.

Shortly thereafter, Freddie Mac filed a suit for possession of the subject property in a state district court.  On August 27, 2012, the state court entered a default judgment of possession against Plaintiffs, awarding possession of the property to Freddie Mac.  (*See* Wells Fargo's Motion, Ex. E, 8/7/2012 Judgment.)  On May 2, 2013, the state district court issued an order to evict Plaintiffs from the property, (*see* Wells Fargo's Motion, Ex. F, Order of Eviction), but this order (as well as the state district court suit as a whole) evidently has been stayed pending the resolution of the present action.

---

[3]In their proposed amended complaint, Plaintiffs further allege that Wells Fargo's offer was made in bad faith, as it featured the same interest rate as Plaintiffs' existing loan and promised only a $28.40 reduction in Plaintiffs' monthly payment.  (Plaintiffs' Proposed Amended Complaint at ¶ 52.)

Facing imminent eviction from their home, Plaintiffs commenced the present suit in state court on or around May 3, 2013, asserting a claim under the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and several state-law claims against Defendants Freddie Mac and Wells Fargo, and seeking a judgment setting aside the December 7, 2011 sheriff's sale of their property and awarding various other types of relief. Defendant Freddie Mac removed the case to this Court on May 28, 2013, and both Defendants now have moved for the dismissal of Plaintiffs' complaint on a number of grounds. Plaintiffs, for their part, have requested leave to amend their complaint, so that they may assert three additional claims arising from purported defects in the process through which they sought a modification of the terms of their mortgage loan.

## III. <u>ANALYSIS</u>

### A.    The Standards Governing the Parties' Motions

Through their present motions, Defendants seek the dismissal of Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[4]  When considering a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  Yet, "the tenet that a court must accept as true all of the

---

[4]In the alternative, Defendants have moved for an award of summary judgment in their favor under Fed. R. Civ. P. 56(a).  As observed earlier, however, the Court has not found it necessary to stray beyond the pleadings — or, at least, beyond the materials that may fairly be considered part of the pleadings — in order to resolve Defendants' motions.  It follows that these motions may be decided under the standards of Rule 12(b)(6).

allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted).  Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Turning to Plaintiffs' motion for leave to amend their complaint, the governing Federal Rule provides that such leave should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. American Electric Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir. 2001).  An amendment is deemed

6

futile if the resulting amended complaint "could not withstand a Rule 12(b)(6) motion to

dismiss." *Rose v. Hartford Underwriters Insurance Co.,* 203 F.3d 417, 420 (6th Cir.

2000).

**B.      Because the State Court Eviction Suit Remains Pending and No Final
Judgment Has Yet Been Entered, the *Rooker-Feldman* Doctrine Does Not
Apply Here.**

As its first argument in support of its motion to dismiss, Defendant Wells Fargo

contends that the *Rooker-Feldman* doctrine operates in this case to divest this Court of

subject matter jurisdiction, where Plaintiffs' claims effectively invite the Court to review

the state district court's orders awarding possession of the subject property to Defendant

Freddie Mac and evicting Plaintiffs from this property.  While the Court agrees that certain

of the prerequisites to the application of the *Rooker-Feldman* doctrine are met here, the

absence of a final state court judgment precludes the Court from invoking this doctrine.

In another case challenging the foreclosure sale of a home, this Court described the

*Rooker-Feldman* doctrine as follows:

> In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103
> S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that federal
> district courts lack subject matter jurisdiction to review state court
> proceedings, as such review is limited to the Supreme Court of the United
> States.  *See Rooker v. Fid. Trust Co.,* 263 U.S. 413, 417, 44 S.Ct. 149, 150,
> 68 L.Ed. 362 (1923).  Prohibition of federal action pursuant to the *Rooker-
> Feldman* doctrine is limited to "cases brought by state court losers
> complaining of injuries caused by state court judgments rendered before the
> district court proceedings commenced and inviting district court review and
> rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.
> Corp.,* 544 U.S. 280, 281, 125 S.Ct. 1517, 1520, 161 L.Ed.2d 454 (2005).
> The doctrine only applies if the federal claim is "inextricably intertwined"
> with the state court judgment, meaning the federal claim only succeeds by

7

> declaring that the state court wrongly decided the issues before it. *Loriz v. Connaughton,* 233 Fed. Appx. 469, 474 (6th Cir. 2007). If, however, a plaintiff brings a claim independent of the state court's judgment, even though such a claim denies the state court's legal conclusion, then there is jurisdiction in the district court. *McCormick v. Braverman,* 451 F.3d 382, 392 (6th Cir. 2006). Thus, *Rooker-Feldman* only applies when the cause of the plaintiff's complaints is the state court judgment itself. *Id.* at 393.

*Battah v. ResMAE Mortgage Corp.,* 746 F. Supp.2d 869, 872-73 (E.D. Mich. 2010). The Court then found that the *Rooker-Feldman* doctrine was applicable to certain of the plaintiff's claims in that case, to the extent that those claims sought to "undo the sheriff's sale of the property" at issue in the suit and prevent the eviction of the plaintiff from this property pursuant to a state court judgment. *Battah,* 746 F. Supp.2d at 873-74; *see also Colbert v. Federal National Mortgage Ass'n,* No. 12-13844, 2013 WL 1629305, at *7 (E.D. Mich. Apr. 16, 2013) (Borman, J.) (finding that the *Rooker-Feldman* doctrine applied to the plaintiff's claims "relating to the foreclosure process and eviction proceedings and seeking return of the [p]roperty" at issue in that case).

The Court agrees with Wells Fargo that the facts and circumstances here share much in common with those in *Battah.* Here, as in *Battah,* Plaintiffs seek through their claims to undo the sheriff's sale of the subject property and prevent any further efforts to evict them from the property. Indeed, in the plea for relief accompanying each count of their complaint (as well as each count of their proposed amended complaint), Plaintiffs expressly request an order (i) expunging the December 7, 2011 sheriff's sale of the property, and (ii) enjoining any further sheriff's sales or eviction proceedings. Thus, "[g]ranting this relief would require the Court to reverse the state court's judgment

8

granting possession of the [p]roperty to [Freddie Mac]," *Colbert,* 2013 WL 1629305, at *7, and it is precisely this review and "reversal" of a state court judgment by a federal district court that the *Rooker-Feldman* doctrine forbids.

Moreover, this Court's ruling in *Battah* squarely defeats Plaintiffs' sole argument against the application of the *Rooker-Feldman* doctrine here.  In their response to Defendants' motions, Plaintiffs contend that this doctrine may not be invoked where, as here, a suit is originally filed in state court and then removed to federal district court.  (*See* Plaintiffs' Response Br. at 5.)  Yet, precisely the same was true in *Battah — i.e.,* the suit was commenced in state court and then removed to federal court — but this Court nonetheless found that the *Rooker-Feldman* doctrine precluded the exercise of jurisdiction over claims that sought to undo the sheriff's sale of the property at issue in that case or overturn the state court order evicting the plaintiff from the property.  *See Battah,* 746 F. Supp.2d at 871, 873-74.  The only effect of removal in *Battah* pertained to the **remedy** flowing from the application of *Rooker-Feldman* — while the defendant lenders sought the dismissal of the plaintiffs' claims, this Court found instead that it must remand to state court the claims reached by the *Rooker-Feldman* doctrine.  746 F. Supp.2d at 874; *see also Mills v. Harmon Law Offices, P.C.,* 344 F.3d 42, 45-46 (1st Cir. 2003).  Likewise, in this case, if the Court were to conclude that the *Rooker-Feldman* doctrine applies, the appropriate relief would be a remand to state court, rather than the dismissal of Plaintiffs' complaint as sought in Wells Fargo's motion.

Yet, the Court need not confront this possibility, as it finds that one of the

9

prerequisites to the application of the *Rooker-Feldman* doctrine is lacking here. As stated by the Supreme Court, the *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over **final** state-court judgments." *Lance v. Dennis,* 546 U.S. 459, 463, 126 S. Ct. 1198, 1201 (2006) (emphasis added). Likewise, the Court observed in *Exxon Mobil,* 544 U.S. at 291, 125 S. Ct. at 1526, that in each of the two prior cases from which the doctrine derives its name, "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." In light of this requirement of a final judgment at the conclusion of state proceedings, the Sixth Circuit has found that the *Rooker-Feldman* doctrine "does not apply to parallel state and federal litigation." *Marks v. Tennessee,* 554 F.3d 619, 622 (6th Cir. 2009).

This requirement of a final state court judgment is not satisfied here. Although the state district court has entered an order authorizing the eviction of Plaintiffs from the property at issue, (*see* Wells Fargo's Motion, Ex. F, 5/2/2013 Order of Eviction), the parties later stipulated to the entry of an order staying the state district court proceedings while the present federal suit remains pending, (*see* Plaintiffs' Reply in Support of Motion for Remand, Ex. B, 5/29/2013 Stipulated Order for Escrow and Stay). It follows that the state district court's order of eviction is not final, and that the state court proceedings are not yet concluded. This precludes the application of the *Rooker-Feldman* doctrine in this case.

**C.    With the Expiration of the Period of Redemption, and Absent Any Allegations**

**of Fraud or Irregularity in the Foreclosure Process, Plaintiffs May No Longer Seek to Set Aside the Foreclosure Sale of Their Home.**

Apart from Wells Fargo's jurisdictional challenge, Defendants also argue that Plaintiffs' complaint is subject to dismissal in its entirety because the principal relief sought in each count of this complaint — *i.e.,* reversal of the December 7, 2011 sheriff's sale of the property at issue in this case — may no longer be awarded.  In particular, Defendants cite a wealth of decisions by the Michigan courts and the federal courts in this District recognizing that once the six-month period of redemption has expired following the foreclosure sale of property, the former owner of the property generally lacks a sufficient interest in the property to challenge the foreclosure.  (*See* Wells Fargo's Motion, Br. in Support at 7-10 (collecting cases)).  The Court agrees that the uniform weight of this case law defeats each of the claims asserted by Plaintiffs in this suit.

Again, the Court begins its analysis on this point by quoting from its recent decision in another foreclosure-by-advertisement case that addressed precisely this same issue:

> While Michigan's foreclosure by advertisement statutory scheme provides certain steps that the mortgagee must go through to validly foreclose, it also controls the rights of both the mortgagee and the mortgagor once the sale is completed.  *See* M.C.L. § 600.3204 *et seq*[.]; *see also Senters v. Ottawa Sav. Bank, FSB,* 443 Mich. 45, 50, 503 N.W.2d 639 (1993).  In relevant part, the statute provides the mortgagor with a certain timeframe in which to redeem the property.  M.C.L. § 600.3240.  Once the redemption period following the foreclosure of a property expires, a plaintiff's rights in, and title to, the property are extinguished, and she loses all standing to bring claims with respect to the property.  *See Piotrowski v. State Land Office Bd.,* 302 Mich. 179, 187, 4 N.W.2d 514 (1942) (mortgagors "lost all their right, title, and interest in and to the property at

11

the expiration of their right of redemption"); *see also Conlin v. Mortg. Elec. Registration Sys., Inc.,* 714 F.3d 355, 359 (6th Cir. 2013) (citing *Piotrowski*); *Overton v. Mortg. Elec. Registration Sys.,* 2009 WL 1507342, at *1 (Mich. App. May 28, 2009) ("Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished.").

*Narra v. Fannie Mae,* No. 13-12282, 2014 WL 505571, at *5 (E.D. Mich. Feb. 7, 2014) (footnote omitted).[5]

Just as in *Narra,* 2014 WL 505571, at *5, the Court concludes here that these principles defeat Plaintiffs' effort to overturn the foreclosure sale of their home, no matter the legal theory under which they might seek to do so. The sheriff's sale of the subject property occurred on December 7, 2011, and the six-month redemption period expired on June 7, 2012. Nothing in the complaint, nor elsewhere in the record, indicates that Plaintiffs made any attempt to redeem the property before the expiration of the redemption period. Accordingly, as of June 7, 2012, Defendant Freddie Mac, the purchaser at the sheriff's sale, "became vested with all right, title, and interest in the [p]roperty." *Narra,* 2014 WL 505571, at *5.

Although there are narrow circumstances under which a former property owner may challenge a foreclosure sale after the expiration of the redemption period, Plaintiffs

---

[5]In the omitted footnote, this Court noted a split among the courts in this District as to whether the ruling of the Michigan Court of Appeals in *Overton* "is a 'standing'-based or 'merits'-based decision." *Narra,* 2014 WL 505571, at *5 n.5. In this case, Defendant Wells Fargo has characterized its challenge to Plaintiffs' claims as resting on a lack of "standing," (*see* Wells Fargo's Motion, Br. in Support at 7), and Plaintiffs have responded in kind, claiming that they do indeed have "standing," (*see* Plaintiffs' Response Br. at 6). As in *Narra,* 2014 WL 505571, at *5 n.5, the Court finds it unnecessary to resolve this question here, because the characterization of Defendants' argument as presenting a "standing" or "merits" issue does not alter the Court's analysis in any way.

have not even attempted to argue that such circumstances are present in this case.

"Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made a clear showing of fraud, or irregularity." *Conlin,* 714 F.3d at 359 (internal quotation marks and citations omitted); *see also Narra,* 2014 WL 505571, at *5. Moreover, "not just any type of fraud will suffice. Rather, the misconduct must relate to the foreclosure procedure itself." *Conlin,* 714 F.3d at 360 (internal quotation marks, alteration, and citations omitted). The allegations of Plaintiff's complaint are directed exclusively at the loan modification process, rather than any aspect of the foreclosure procedure.[6] In any event, these allegations lack any element of fraud, with Plaintiffs instead complaining that Wells Fargo was largely non-responsive to Plaintiffs' communications and requests during the loan modification process and that, when a loan modification offer ultimately was forthcoming, it was provided too late for Plaintiffs to meaningfully consider and its terms were not acceptable. Thus, Plaintiffs have failed to allege any ground recognized by the Michigan courts for setting aside a foreclosure sale after the expiration of the redemption period.

Notably, Plaintiffs do not take issue with any of this in their response to

---

[6]As noted in *Narra,* 2014 WL 505571, at *6, even assuming that Plaintiffs could establish that Wells Fargo breached a duty owed to them in the loan modification process, "a borrower's sole relief for a purported violation of the loan modification statutes is to seek to convert the foreclosure sale to a judicial foreclosure." Consequently, Plaintiffs' allegations concerning purported defects in the loan modification process, even if proven, would not provide a basis for the principal relief they seek in this suit — namely, setting aside the sheriff's sale.

Defendants' motions, but instead assert only that they have standing under Article III of the U.S. Constitution to challenge the foreclosure sale of their home. (*See* Plaintiffs' Response Br. at 6.) This contention, while perhaps accurate, is utterly beside the point. Whether the issue raised in Defendants' motions is more properly characterized as one of "standing" or as implicating the merits of Plaintiffs' claims, *see Conlin,* 714 F.3d at 359 & n.4; *Narra,* 2014 WL 505571, at *5 n.5, this issue of Michigan law is wholly distinct from the question whether Plaintiffs have Article III standing to bring this suit, *see, e.g., Carmack v. Bank of New York Mellon,* No. 12-1953, 534 F. App'x 508, 510 n.2 (6th Cir. Aug. 27, 2013); *Whitehead v. Federal National Mortgage Ass'n,* No. 12-13840, 2013 WL 5353050, at *2 (E.D. Mich. Sept. 24, 2013).

Consequently, Plaintiffs' appeal to Article III is inapposite, and cannot serve to overcome Defendants' contention, based on a wealth of Michigan and federal district court rulings, that Plaintiffs have failed to put forth a legal theory or allegations that would permit them to challenge the sheriff's sale of their home after the expiration of the six-month redemption period. Because this challenge is the lynchpin to the relief sought by Plaintiffs under each of the four counts of their complaint, and because the other relief requested in the complaint — *e.g.,* injunctive relief directing Defendants to reinstate the loan modification process and proscribing any further foreclosure efforts or eviction proceedings — is dependent upon the success of Plaintiffs' effort to set aside the sheriff's sale, it follows that the entirety of Plaintiffs' complaint is subject to dismissal.

**D.      Plaintiffs' Allegations Fail as a Matter of Law to Support Any of the Theories**

14

**of Recovery Advanced in Their Complaint.**

Although the Court has determined that Plaintiffs' complaint must be dismissed in light of their failure to take any action challenging the foreclosure sale of the subject property during the sixth-month redemption period, Defendants argue in the alternative that each of the four counts of Plaintiffs' complaint fails to state a claim upon which relief can be granted. As discussed briefly below, the Court agrees.

In the first count of their complaint, Plaintiffs challenge Defendants' standing to foreclose on their mortgage, alleging that the mortgage was never properly assigned to Defendant Wells Fargo, and that Wells Fargo therefore was "not a holder in due course." (Complaint at ¶¶ 23-24.) The record establishes beyond dispute, however, that the mortgage was assigned to Wells Fargo in 2007, and that this assignment was recorded with the Wayne County Register of Deeds on April 30, 2007. (*See* Wells Fargo's Motions, Ex. C, Assignment of Mortgage).[7] In light of this undisputed evidence of Wells Fargo's interest in the indebtedness secured by the mortgage, Wells Fargo had standing under Michigan law to foreclose upon the subject property. *See* Mich. Comp. Laws § 600.3204(1)(d); *see also Hargrow v. Wells Fargo Bank N.A.,* No. 11-1806, 491 F. App'x 534, 537 (6th Cir. July 3, 2012). In addition, because Plaintiffs were not parties to the assignment of the mortgage, they lack standing to challenge the validity of this

---

[7]The Court notes that it may consider this assignment while still treating Defendants' motions as brought under Rule 12(b)(6), both because the assignment is a public record of which the Court may take judicial notice, *see New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003), and because, as explained earlier, this assignment is expressly referenced in Plaintiffs' complaint, *see infra* at 3 n.2.

assignment. *See, e.g., Stack v. BAC Home Loans Servicing, LP,* No. 11-13746, 2012 WL

3779186, at *5 (E.D. Mich. Aug. 31, 2012); *Aliahmad v. U.S. Bank National Ass'n,* No.

12-11844, 2012 WL 3639282, at *4 (E.D. Mich. Aug. 24, 2012). Finally, to the extent

that Plaintiffs suggest that there was some sort of defect in the foreclosure process due to

Wells Fargo's alleged failure to comply with Plaintiffs' request for "copies of the original

mortgage and note," (Complaint at ¶ 22), the case law rejects the notion that Michigan law

requires the presentation of the original note or the so-called "wet-ink" mortgage. *See,*

*e.g., Aliahmad,* 2012 WL 3639282, at *5; *Jozlin v. U.S. Bank National Ass'n,* No. 11-

12749, 2012 WL 12760, at *2-*3 (E.D. Mich. Jan. 4, 2012).

The second count of Plaintiffs' complaint alleges that Wells Fargo violated the

federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* by

failing to notify Plaintiffs of the assignment of the mortgage. (*See* Complaint at ¶¶ 26-

28.)[8]  As Wells Fargo correctly observes in its motion, however, the notice mandated

under RESPA is notice of the transfer of ***servicing*** of a mortgage loan. *See* 12 U.S.C. §

2605(b)(1) (providing that "[e]ach servicer of any federal related mortgage loan shall

---

[8]As noted by Wells Fargo, Plaintiffs' allegations in support of this claim are inconsistent and, quite frankly, nonsensical. In one paragraph of the complaint, Plaintiffs allege that Wells Fargo "supposed[ly] assumed the mortgage in October 2011, yet failed to notify Plaintiffs." (*Id.* at ¶ 27.) Yet, in the very next paragraph, Plaintiffs allege that Wells Fargo "failed to record any assignment of mortgage until the year 2005, two years from the date of the assignment." (*Id.* at ¶ 28.) In fact, the undisputed record shows, as discussed earlier, that the mortgage was assigned to Wells Fargo in 2007, and that this assignment was recorded on April 30, 2007. (*See* Wells Fargo's Motion, Ex. C, Assignment of Mortgage.) Indeed, elsewhere in their complaint, Plaintiffs acknowledge that the assignment to Wells Fargo was recorded "[o]n or about May 1, 2007." (Complaint at ¶ 12.)

notify the borrower in writing of any assignment, sale, or transfer of the *servicing* of the loan to any other person" (emphasis added)).  Moreover, Plaintiffs' complaint lacks any allegations as to how they might have been harmed by this purported lack of notice, and this "complete absence of alleged damages warrants a dismissal of Plaintiff[s'] RESPA claim."  *Battah,* 746 F. Supp.2d at 876.[9]

Next, the third count of Plaintiffs' complaint[10] evidently alleges that Wells Fargo engaged in negligent conduct during the course of the parties' discussions about a possible loan modification.  Yet, as a number of courts have held under facts and circumstances analogous to those presented here, Plaintiffs cannot pursue a claim of negligence where their relationship with Wells Fargo is governed by an express contract, and where they have failed to allege that Wells Fargo owed them a duty separate and distinct from its obligations under the parties' contract.  *See, e.g., Johnson v. Wells Fargo Bank, N.A.,* No. 13-10146, 2013 WL 823369, at *6-*7 (E.D. Mich. Mar. 6, 2013); *Droski v. Wells Fargo Bank, N.A.,* No. 11-11193, 2012 WL 3224134, at *6 (E.D. Mich. Aug. 6, 2012).

Finally, in the fourth count of their complaint,[11] Plaintiffs allege that Wells Fargo made willful misrepresentations during the course of the parties' discussions about a

---

[9]To the extent that the second count of Plaintiffs' complaint rests upon the allegation that Wells Fargo somehow breached the "4th paragraph" of the mortgage contract, which purportedly required the mortgagee to "provide notice within 15 days of any transfer or assignment of [the] mortgage," (Complaint at ¶ 29), Wells Fargo points out that no such language appears anywhere in the mortgage agreement, (*see* Wells Fargo's Motion, Ex. B, Mortgage).

[10]The complaint duplicatively refers to this as count "II."

[11]Again, this count is mislabeled as count "III."

17

possible loan modification.  Plaintiffs' complaint, however, fails to identify any such

alleged misrepresentation made by Wells Fargo — nor, indeed, any statement made by

Wells Fargo at all, whether truthful or otherwise.  Rather, Plaintiffs complain that they

were unable to contact a Wells Fargo representative to obtain assistance in completing a

loan modification, that they were given insufficient time and opportunity to review the

loan modification offer ultimately made by Wells Fargo, and that by the time they reached

a Wells Fargo representative, it was no longer possible to accept the bank's offer.  (*See*

Complaint at ¶¶ 39-43.)  These allegations, even if proven, would not satisfy the elements

of a claim of misrepresentation under Michigan law.  In addition, absent allegations of a

promise made in writing and signed by a Wells Fargo representative, "[c]ourts in this

District have repeatedly held that misrepresentation claims based on alleged promises to

modify home mortgages are barred by the Michigan Statute of Frauds."  *Loeffler v. BAC*

*Home Loans Servicing, L.P.,* No. 11-13711, 2012 WL 666750, at *5 (E.D. Mich. Feb. 29,

2012) (citing cases).

**E.     Plaintiffs Are Not Entitled to Amend Their Complaint, Where the Amendments They Propose Would Be Futile.**

Now that the Court has determined that the claims asserted in Plaintiffs' initial

complaint are subject to dismissal, it remains only to inquire whether the claims asserted in

Plaintiffs' proposed amended complaint might fare any better.  Notably, this proposed

amended complaint does not differ in any material respect from Plaintiffs' original

18

complaint as to its factual allegations and first four counts,[12] but instead adds three new claims to the four advanced in Plaintiffs' initial complaint. Consequently, this proposed amended complaint can be of no assistance to Plaintiffs in avoiding the dismissal of the four claims asserted in their original complaint, and there is no need for the Court to revisit its foregoing analysis as to these claims. Rather, the Court need only consider whether the three additional claims advanced in Plaintiffs' proposed amended complaint rest on sufficient factual allegations and viable legal theories of recovery. As discussed below, the Court finds that they do not, and that the amendments sought by Plaintiffs must be denied as futile.

First and foremost, just as the Court previously concluded that the four counts of Plaintiffs' initial complaint are subject to dismissal because they seek relief — *i.e.,* reversal of the December 7, 2011 sheriff's sale of the subject property — that can no longer be awarded upon the expiration of the six-month redemption period, this same defect is present as to each of the three additional claims Plaintiffs seek to assert. The additional allegations found in Plaintiffs' proposed amended complaint lend no support to a finding of fraud in the foreclosure procedure that would permit Plaintiffs to challenge the foreclosure sale of the subject property after the redemption period has lapsed. Instead, these allegations, like those in Plaintiffs' initial complaint, are directed solely at the loan

---

[12]Indeed, Plaintiffs' proposed amended pleading includes many of the same misspellings, grammatical errors, contradictory allegations, and erroneous citations to authority found in their initial complaint.

19

modification process, and not at any purported defects in the foreclosure procedure

employed by Defendants.  Moreover, the relief sought under each of Plaintiffs' three new

theories of recovery is precisely the same as the relief sought under the first four counts of

the complaint.  As explained earlier, because the principal relief sought by Plaintiffs under

each count of their original and proposed amended complaints is no longer available, and

because the remaining relief under these counts is dependent upon the reversal of the

foreclosure sale of the subject property, Plaintiffs' failure to act within the redemption

period precludes them from securing any of the relief sought in their initial or proposed

amended complaints.

Next, as to the breach of contract claim asserted in the fifth count of Plaintiffs'

proposed amended complaint, Plaintiffs have failed to identify the contract upon which

this claim is based, nor have they alleged a breach of one or more terms of this contract.

Although Plaintiffs complain (i) that Defendant Wells Fargo gave them insufficient time

and opportunity to weigh the bank's offer of a loan modification, (ii) that Wells Fargo

representatives were unavailable to discuss this offer until after the time for accepting it

has passed, and (iii) that the offer's terms are indicia of the bank's bad faith, (*see* Proposed

Amended Complaint at ¶¶ 45-52), Plaintiffs have utterly failed to identify any contract that

might give rise to Wells Fargo's obligations to negotiate a loan modification in good faith,

propose terms more favorable or more to the liking of a borrower, or provide any certain

amount of time within which a borrower may respond to a loan modification offer.

To be sure, the Michigan loan modification statute in place at the time at issue here

20

imposed a duty upon lenders to engage in a loan modification process with a borrower when certain specified conditions were met.  *See* Mich. Comp. Laws § 600.3205c.[13]  Yet, this Court and others have explained that this statute "does not demand that a lender modify a mortgage, but merely requires that the lender undertake an inquiry whether a borrower qualifies for a loan modification upon the borrower's request for such a modification and submission of the appropriate documentation."  *Whitehead,* 2013 WL 5353050, at *6 (internal quotation marks, alteration, and citation omitted); *see also West v. Wells Fargo Bank, N.A.,* No. 12-13572, 2013 WL 3213269, at *2 (E.D. Mich. June 26, 2013) (noting that this statute "does not require Defendant to modify Plaintiffs' loan," but "only requires Defendant to consider Plaintiffs for a loan modification").  Even assuming that Plaintiffs had pled a claim under this statute, rather than a breach of contract claim, they have failed to allege that they satisfied all of the prerequisites for engaging the statutory loan modification process, nor that Wells Fargo failed to comply with any duty imposed by this statute.  To the contrary, they have affirmatively alleged that Wells Fargo did, in fact, offer to modify their loan, albeit not under terms that Plaintiffs deemed satisfactory.  These allegations certainly do not suggest a violation of § 600.3205c, and the Court declines to scour the law on Plaintiffs' behalf to determine whether a claim could be asserted under this or some other Michigan statute in light of the record presented here.

_____

[13]Michigan recently enacted legislation under which § 600.3205c and other related statutory provisions are repealed as of June 30, 2014, and the terms of § 600.3205c no longer apply to foreclosure proceedings in which the first notice is published after January 9, 2014.  *See* Mich. Comp. Laws § 600.3205e

Plaintiffs next propose to add a claim of promissory estoppel, based on Defendants' alleged promises that "Plaintiffs would obtain a loan modification." (Proposed Amended Complaint at ¶ 55.) As explained earlier, however, Michigan's statute of frauds bars any such claim against a financial institution to the extent that it rests on alleged oral representations, *see* Mich. Comp. Laws § 566.132(2), and Plaintiffs' proposed amended complaint alleges only statements made "verbally by telephone," (Proposed Amended Complaint at ¶ 58), and not any promises or other representations made in writing and signed by one of the Defendants. Accordingly, this proposed amendment is futile.

Finally, Plaintiffs propose to assert a claim that Defendants breached a duty of good faith and fair dealing, based once again on allegations that Plaintiffs were led to believe that a loan modification would be forthcoming, but that the offer ultimately made by Defendant Wells Fargo unacceptably provided only modest relief from Plaintiffs' existing mortgage payment. (*See* Proposed Amended Complaint at ¶¶ 63-66.) Yet, as Wells Fargo observes, the Michigan courts do not recognize a standalone cause of action for breach of an implied covenant of good faith and fair dealing. *See Fodale v. Waste Management of Michigan, Inc.,* 271 Mich. App. 11, 718 N.W.2d 827, 841 (2006). Rather, an alleged breach of this implied covenant merely serves to lend additional support to a breach of contract claim asserted elsewhere in a plaintiff's complaint. *See Metropolitan Alloys Corp. v. Considar Metal Marketing, Inc.,* No. 06-12667, 2007 WL 2874005, at *10 (E.D. Mich. Sept. 25, 2007). As discussed above, Plaintiffs' proposed amended complaint is bereft of allegations as to the existence of a contract between the parties or a breach of any

obligation owed by one of the Defendants to Plaintiffs under any such contract.  It follows

that there is no viable breach of contract claim in this case to which Plaintiffs could hitch

their allegations of a breach of the implied covenant of good faith and fair dealing.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Wells Fargo's June 18, 2013 motion to dismiss (docket #8) is GRANTED.  IT IS FURTHER ORDERED that Defendant Freddie Mac's June 25, 2013 motion to dismiss (docket #12) also is GRANTED.  Finally, IT IS FURTHER ORDERED that Plaintiffs' August 14, 2013 motion for leave to file an amended complaint (docket #23) is DENIED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 24, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 24, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

24